UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ELIZABETH A. REGO and TODD W. FRATUS, SR., <br><br> Plaintiffs, <br><br> v. <br><br> SELECT PORTFOLIO SERVICES, INC. <br><br> Defendant. | * <br> * <br> * <br> * <br> * <br> * Civil Action No. 18-cv-11300-ADB <br> * <br> * <br> * <br> * <br> * |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Plaintiffs Elizabeth Rego and Todd Fratus, Sr. bring claims for declaratory judgment (Count I), breach of contract (Count II), breach of the implied covenant of good faith and fair dealing (Count III), and violation of Massachusetts General Laws Chapter 93A (Count IV) related to Defendant Select Portfolio Services, Inc.'s ("SPS") servicing and modification of their mortgage loan. [ECF No. 1-1 at 4–13 ("Complaint" or "Compl.")]. SPS moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons explained herein, the motion is GRANTED, and the Complaint is DISMISSED with leave to amend.

I.   **BACKGROUND**

The following facts are drawn from the Complaint, the well-pleaded allegations of which are taken as true for purposes of evaluating SPS's motion to dismiss. See Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014). Certain details are also culled from documents whose authenticity are not disputed by the parties, from official public records, and from documents attached or referred to in the Complaint. See Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).

Plaintiffs are domestic partners who purchased their current residence in Pepperell, Massachusetts in October 2004 for $358,000 using an "80/20," "no money down" financing that required two mortgages to be issued by First Franklin Corp. ("First Franklin"). [Compl. ¶¶ 7–9]. The first mortgage had an initial principal of $286,400, and the second mortgage had an initial principal of $71,600. [Id. ¶¶ 9–10]. In early 2008, Plaintiffs began experiencing problems with First Franklin, which refused to accept certain payments, returned purported overpayments that it should not have, and threatened foreclosure at times when Plaintiffs' account was current. [Id. ¶¶ 14.c–d]. In 2009, First Franklin assigned the first mortgage to Wells Fargo Bank, N.A. as trustee for a mortgage-backed securities trust. [ECF No. 9 at 19–20]. In July 2011, Wells Fargo assigned the first mortgage to PNC Bank, N.A. and SPS became the servicer for the first mortgage. [Id. ¶ 15; ECF No. 9 at 23–24].[1] Prior to SPS taking over as servicer for the first mortgage, Plaintiffs repeatedly attempted to secure a modification of both mortgages, but their attempts were delayed by First Franklin's insistence that several of their applications were incomplete. [Compl. ¶¶ 14.i–15]. First Franklin eventually offered Plaintiffs a modification that would incorporate both the first and second mortgages, but sold the mortgages before Plaintiffs could close on the modification. [Id. ¶¶ 14.n, 15].

After servicing transferred, SPS told Plaintiffs that their outstanding modification offer was void, refused to accept mortgage payments, required Plaintiffs to reapply for a loan modification, and informed Plaintiffs that the modification would not include the second mortgage because it had not been part of SPS's purchase. [Id. ¶¶ 15–18, 21]. Plaintiffs submitted a new modification application to SPS, but found the process was disorganized and

---

[1] The Complaint and SPS's brief leave unclear exactly when SPS became Plaintiffs' mortgage servicer. Both suggest that the servicing transfer occurred at some point prior to the end of July 2011. [Compl. ¶ 14.b; ECF No. 9 at 2].

that SPS had not received the paperwork related to their prior modification applications, which caused unnecessary delays. [Id. ¶¶ 18–19]. At one point, SPS erroneously sent a check for real estate taxes on Plaintiffs' property to the Town of Pepperell, but because no real estate taxes were due, the town returned the check to SPS. [Id. ¶¶ 28–29]. SPS also charged attorneys' fees to Plaintiffs' mortgage balance. [Id. ¶¶ 19–21]. On at least one occasion when Plaintiffs' first mortgage was current, SPS scheduled and threatened to proceed with a foreclosure auction if Plaintiffs refused to make certain trial payments associated with their loan modification. [Id. ¶¶ 23, 27, 36, 38].

Plaintiffs finally secured a modification of the first mortgage on September 18, 2012, but SPS included $107,000 in fees, including attorneys' fees, in the principal due, which then totaled $375,077.11. [Id. ¶¶ 21–22]. Although the modification provided Plaintiffs with several benefits, including an initial interest rate of 2.00 percent and a "deferred principal balance" of $153,077.11 on which interest would not accrue, the modified mortgage balance would have been considerably lower if not for the fees caused by SPS's delays. [Id. ¶¶ 22, 37, 39; ECF No. 9 at 27].

Plaintiffs filed for Chapter 7 bankruptcy protection in 2017 and obtained discharges later that year. [Compl. ¶¶ 1–2]. On June 21, 2017, Plaintiffs filed an adversary proceeding against First Franklin, Ditech Financial, LLC ("Ditech"),[2] and SPS based on substantially the same

---

[2] Ditech is a loan servicer that appears to have serviced Plaintiffs' second mortgage. Plaintiffs' complaint in the adversary proceeding alleged that Ditech was seeking $107,793.41, which was "exactly the same amount" as an execution that Deutsche Bank obtained from a 2013 civil lawsuit against Plaintiff Fratus. [Complaint of Debtors ¶ 34, Rego v. Select Portfolio Servs., Inc. (In re Rego), Adv. Pro. 17-04028 (D. Mass. Jun. 21, 2017), ECF No. 1]. Conversely, in this case, the Court understands Plaintiffs to be alleging that SPS charged "$107,000 in attorney's fees to the first mortgage account of the Plaintiffs" which was later included in the September 2012 loan modification based on Plaintiffs' assertions that "[w]hen Rego and Fratus finally modified the mortgage, it did not include the second mortgage, but did include over $100,000.00

3

allegations made here. [Id. ¶ 3; see Rego v. Select Portfolio Servs., Inc. (In re Rego), Adv. Pro. 17-04028 (D. Mass)]. Plaintiffs settled their claims against First Franklin, but their claims against SPS were dismissed by the bankruptcy court for lack of jurisdiction on December 8, 2017. [Compl. ¶¶ 5–6; Order of Court, Rego v. Select Portfolio Servs., Inc. (In re Rego), Adv. Pro. 17-04028 (D. Mass. Dec. 8, 2017), ECF No. 43]. On May 10, 2018, Plaintiffs filed this action in state court seeking a declaratory judgment in the nature of an accounting and alleging breach of contract, breach of the implied covenant of good faith and fair dealing, and a violation of Massachusetts Chapter 93A. [ECF No. 1-1 at 2; see generally Compl.]. On June 21, 2018, SPS removed the action to this Court. [ECF No. 1].

## II. MOTION TO DISMISS STANDARD

On a motion to dismiss for failure to state a claim, the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences in the light most favorable to the plaintiff. United States ex rel. Hutcheson v. Blackstone Med., Inc., 647 F.3d 377, 383 (1st Cir. 2011). While detailed factual allegations are not required, a complaint must set forth "more than labels and conclusions," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and it must contain "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (internal quotations and citations omitted). The facts alleged, taken together, must "state a claim to relief that is plausible on its face." A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (quoting Twombly, 550 U.S. at 570). "A claim is

---

in fees, that Select Portfolio would not itemize or explain." [Compl. ¶ 39; ECF No. 13 at 4; see also ECF No. 13 at 8 (arguing that "no consumer mortgage modification should include the $107,000.00 in costs and attorney fees that the Defendant SPS representative said were included in the modified mortgage")].

4

facially plausible if supported by 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Eldredge v. Town of Falmouth, 662 F.3d 100, 104 (1st Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 665 (2009)).

When assessing the sufficiency of a complaint, the Court first "separate[s] the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Maddox, 732 F.3d at 80 (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). Next, the Court "determine[s] whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Morales-Cruz, 676 F.3d at 224). "[T]he court may not disregard properly pled factual allegations, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'" Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (quoting Twombly, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," however, a claim may be dismissed. Iqbal, 556 U.S. at 679.

## III. DISCUSSION

SPS argues (1) that the Complaint fails to state claims for breach of contract or breach of the implied covenant of good faith and fair dealing, (2) that the Complaint fails to state a Chapter 93A claim, (3) that declaratory relief is barred as a matter of law, and (4) that the loan modification bars this action. [ECF No. 9 at 5–16].[3] The Court will address the first three arguments in turn, and finds it unnecessary to address the fourth.

---

[3] The Court has reordered SPS's arguments to conform with the order in which they are addressed herein.

5

A.  **Plaintiffs Fail to State a Breach of Contract or the Implied Covenant of Good Faith and Fair Dealing**

Plaintiffs claim that SPS breached an unspecified contract (Count II) and the corresponding implied covenant of good faith and fair dealing (Count III) through its dilatory tactics and by levying impermissible fees prior to the September 2012 loan modification.[4] "To demonstrate a breach of contract, '[Plaintiffs] must prove that a valid, binding contract existed, the defendant breached the terms of the contract, and the plaintiff sustained damages as a result of the breach.'" Young v. Wells Fargo Bank, N.A. (Young II), 828 F.3d 26, 32 (1st Cir. 2016) (quoting Young v. Wells Fargo Bank, N.A. (Young I), 717 F.3d 224, 232 (1st Cir. 2013)). The implied covenant of good faith and fair dealing is implied in every contract under Massachusetts law. Shaulis v. Nordstrom, Inc., 865 F.3d 1, 16 n.7 (1st Cir. 2017). This implied covenant provides that "neither party shall do anything that will have the effect of destroying or injuring the right of the other party to the fruits of the contract." Young I, 717 F.3d at 237 (quoting T.W. Nickerson, Inc. v. Fleet Nat'l Bank, 924 N.E.2d 696, 703–04 (Mass. 2010)). "The concept of good faith 'is shaped by the nature of the contractual relationship from which the implied covenant derives,' and the 'scope of the covenant is only as broad as the contract that governs the particular relationship.'" Id. at 238 (quoting Ayash v. Dana-Farber Cancer Inst., 822 N.E.2d 667, 684 (Mass. 2005)). "As a consequence, the implied covenant cannot 'create rights and

---

[4] Although the Complaint references two mortgage loans to which SPS was not initially a party, numerous attempts at modification sought from First Franklin, and an eventual mortgage modification entered into with SPS, the entirety of Plaintiffs' claim for breach of contract (Count II) states, "The Plaintiffs Elizabeth A. Rego and Todd W. Fratus, Sr. restate paragraphs 1 through 36 and incorporate each herein by reference. Wherefore, the Plaintiffs Elizabeth A. Rego and Todd W. Fratus, Sr. request that judgment enter against the Defendant Select Portfolio Servicing, Inc. for Breach of Contract with money damages, interest, costs and attorney's fees." Compl. ¶ 44. Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing (Count III) is similarly abbreviated and does not specify the contract giving rise to the obligations that are supposedly at issue. Id. ¶¶ 45–46.

6

duties not otherwise provided for in the existing contractual relationship.'" Id. (internal citation omitted). "[T]he implied covenant of good faith and fair dealing governs conduct of parties after they have entered into a contract; without a contract, there is no covenant to be breached." Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 412 F.3d 215, 230 (1st Cir. 2005).

Plaintiffs argue that SPS breached (1) the mortgage contract by charging excessive fees and subsequently including those fees in the modified mortgage balance and (2) the implied covenant of good faith and fair dealing by making last minute demands for payment on the eve of a foreclosure auction that deprived them of the peaceful use of their home. [ECF No. 13 at 4–5]. Plaintiffs have not pled that those actions occurred after the September 18, 2012 loan modification, and they do not allege a contractual relationship with SPS prior to that date. Plaintiffs therefore fail to state a claim for breach of contract or breach of the implied covenant of good faith and fair dealing and Counts II and III will therefore be dismissed with leave to amend.

B. Chapter 93A

Plaintiffs claim that SPS violated Chapter 93A (Count IV) by engaging in "unfair and deceptive consumer practices that caused the Plaintiffs financial damages and severe emotional distress." [Compl. ¶ 48]. To prevail on a Chapter 93A claim, Plaintiffs must prove (1) "that a person who is engaged in trade or business committed an unfair or deceptive trade practice," and (2) "that [they] suffered a loss of money or property as a result." Morris v. BAC Home Loans Servicing, L.P., 775 F. Supp. 2d 255, 259 (D. Mass. 2011) (quoting Brandon Assocs. v. FailSafe Air Safety Sys. Corp., 384 F. Supp. 2d 442, 446 (D. Mass. 2005)). Although there is no precise test for determining whether conduct is unfair or deceptive, "Massachusetts courts have laid out a number of helpful guideposts." Hanrahran v. Specialized Loan Servicing, LLC, 54 F. Supp. 3d

7

149, 154 (D. Mass. 2014). "Under Chapter 93A, an act or practice is deceptive 'if it possesses a tendency to deceive' and 'if it could reasonably be found to have caused a person to act differently from the way he [or she] otherwise would have acted.'" Walsh v. TelTech Sys., Inc., 821 F.3d 155, 160 (1st Cir. 2016) (quoting Aspinall v. Philip Morris Cos., 813 N.E.2d 476, 486–87 (Mass. 2004)). "[A]n act or practice is unfair if it falls 'within at least the penumbra of some common-law, statutory, or other established concept of unfairness;' 'is immoral, unethical, oppressive, or unscrupulous;' and 'causes substantial injury to consumers,'" and the "conduct must generally be of an egregious, non-negligent nature." Id. (quoting PMP Assocs. v. Globe Newspaper Co., 321 N.E.2d 915, 917 (Mass. 1975)). "Both [Defendant's and Plaintiffs'] conduct, knowledge, and what they should have reasonably known may be factors in determining whether an act or practice is unfair." Hanrahran, 54 F. Supp. 3d at 154 (citing Jasty v. Wright Med. Tech., Inc., 528 F.3d 28, 38 (1st Cir. 2008)).

Here, Plaintiffs argue that SPS violated Chapter 93A by causing their real estate escrow balance to be inaccurate, mailing an erroneous refund, delaying their mortgage modification process, and adding grossly inflated fees to Plaintiffs' mortgage balance. [See ECF No. 13 at 7–8]. Plaintiffs' argument that SPS caused their real estate escrow balance to be inaccurate is contrary to the allegations in the Complaint, which places blame for that issue on First Franklin. [See Compl. ¶¶ 14.c–l]. The erroneous refund, a check for $10,000 that SPS allegedly sent to the Town of Pepperell, is also insufficient to establish a claim under Chapter 93A since, according to the Complaint, the town returned the check to SPS and Plaintiffs have made no plausible allegation that this error caused them a loss of money or property. [See id. ¶ 28–29].

With respect to the claim that SPS delayed Plaintiffs' mortgage modification and charged inflated fees, the allegation that the modification process was slow and expensive is insufficient

8

to state a violation of Chapter 93A. "It is well-settled that a bank has no obligation under a note or mortgage to modify a loan." Cabrera v. Sovereign Bank, No. 1:13-CV-10335-RGS, 2014 WL 1803311, at *3 (D. Mass. May 7, 2014). Further, Plaintiffs have not made out a plausible claim that they were the victims of unfair or deceptive conduct. Although Plaintiffs allege that they were charged more than $100,000 in fees that are now included in the principal balance of their mortgage as a result of the loan modification, they have not explained how those fees were inconsistent with any applicable law or contractual obligation, nor have they identified any false or deceptive conduct related to those fees.

Even assuming, *arguendo*, that SPS committed unfair and deceptive trade practices in the time period between becoming Plaintiffs' mortgage servicer in July 2011 and agreeing to a loan modification with Plaintiffs in September 2012, a Chapter 93A claim would be barred by the four-year statute of limitations. See Mass. Gen. Laws ch. 260 § 5A; Azevedo v. U.S. Bank N.A., 167 F. Supp. 3d 166, 170 (D. Mass. 2016) (dismissing predatory lending claim brought under Chapter 93A as time barred). The statute of limitations for a violation of Chapter 93A "involving an issuance of a loan begins to accrue from the moment the parties entered into the loan." Da Silva v. U.S. Bank, N.A., 885 F. Supp. 2d 500, 504 (D. Mass. 2012). Although the statute of limitations is subject to a narrow "discovery rule" exception that "delays accrual beyond the time of injury if the plaintiff does not know and could not reasonably know that he or she may have been harmed by the conduct of another," Maldonado v. AMS Servicing LLC, Nos. 11-40044-FDS, 11-40219-FDS, 2012 WL 220249, at *5 (D. Mass Jan. 24, 2012) (citing Prescott v. Morton Intern., Inc., 769 F. Supp. 404, 408 (D. Mass. 1990)) (internal quotations omitted), Plaintiffs have not shown that that exception applies here, where the amount they agreed to pay under their loan modification was clear at the time that contract was entered into. [Compl.

¶¶ 21–22; ECF No. 9 at 26–31]. Because the fees at issue were incurred on or before September 18, 2012 when the loan was modified, and Plaintiffs did not bring a related claim for nearly five years, the statute of limitations bars the Chapter 93A claim. Count IV will therefore be dismissed with leave to amend.

### C. Declaratory Relief Is Not Appropriate

Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, the Court has "substantial discretion in deciding whether to declare the rights of litigants." MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 136 (2007); see also El Dia, Inc. v. Hernandez Colon, 963 F.2d 488, 493 (1st Cir. 1992). Plaintiffs seek "declaratory relief" that would amount to an accounting of their modified mortgage debt and a "declaration of the damages suffered by Plaintiffs" as a result of SPS's overcharging or misstating the amount due. [Compl. ¶ 43]. The Complaint does not clearly assert whether Plaintiffs are seeking a modification based on fees that were charged before or after the modification agreement. SPS argues that Plaintiffs are attempting to plead their way around the three-year statute of limitations that applies to any allegedly tortious conduct that occurred before the parties agreed to the mortgage modification. [ECF No. 9 at 5–11; see Masingill v. EMC Corp., 870 N.E.2d 81, 89 (Mass. 2007) (quoting Starr v. Fordham, 648 N.E.2d 1261, 1268 (Mass. 1995))].[5] To the extent that Plaintiffs' claim is for a modification of their mortgage debt based on fees that were included in the principal when the modification was

---

[5] "Under Massachusetts law, a tort claim, such as the one asserted . . . for fraudulent inducement, is barred unless it is asserted within three years of the accrual of the cause of action." In re Sullivan, 346 B.R. 4, 19 (Bankr. D. Mass. 2006); see also Mass. Gen. Laws ch. 260, § 2A; Dep't of Revenue of Com. v. Mailhouse, Inc., 7 Mass. L. Rptr. 326, 1997 WL 573212, at *3 (Mass. Super. Aug. 5, 1997) (holding that where the essential nature of the action is for fraudulent misrepresentation, . . . the applicable statute of limitations is three years). Although a borrower may overcome the three-year statute of limitations by demonstrating a fiduciary relationship, that "burden is heavy because generally there is no fiduciary duty between a [lender] and a borrower." In re Sullivan, 346 B.R. at 21.

signed, the Court agrees. See Brown v. Rhode Island, 511 F. App'x 4, 6 (1st Cir. 2013) (noting that declaratory judgment should not be used "simply to proclaim liability for a past act"). To the extent Plaintiffs seek an accounting, the Complaint does not plausibly assert that SPS is seeking to recover amounts in excess of payments that are clearly required by the mortgage modification, and it is therefore unclear why an accounting is appropriate or why a customer would have to resort to a lawsuit to obtain such an accounting. Count I will therefore be dismissed with leave to amend. Given that Plaintiffs are granted leave to amend, the Court expects that SPS will, if it has not already, provide Plaintiffs with a complete accounting related to the modified mortgage.

## IV.   CONCLUSION

Accordingly, the motion to dismiss, [ECF No. 8], is GRANTED. The Complaint is DISMISSED without prejudice. If Plaintiffs wish to amend their Complaint, they must do so within 21 days. Any amended complaint should include a clearer chronology, including dates, and specifics about the nature of the alleged causes of action.

**SO ORDERED.**

February 22, 2019                                         /s/ Allison D. Burroughs
                                                          ALLISON D. BURROUGHS
                                                          U.S. DISTRICT JUDGE